# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **Yi Mei Zhen a/k/a Yi Mia Zheng,** | **Case No. 3:25-cv-01507-PAB** |
| **Petitioner,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **JOHN DOE, Acting Director of the Detroit ICE Field Office for Enforcement and Removal Operations (ERO),** | **MEMORANDUM OPINION & ORDER** |
| **Respondent.** | |

Pending before the Court is Petitioner Yi Mei Zhen a/k/a Yi Mia Zheng's ("Zhen" or "Petitioner") Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus ("Petition").  (Doc. No. 1.) For the following reasons, Zhen's Petition is DENIED.

## I.    Factual and Procedural Background[1]

Zhen was born in China in 1974.  (Doc. No. 1 at PageID #2.)  She entered the United States without inspection on August 2, 1993 at or near San Ysidro, California.  (*Id.*; Doc. No. 1 at PageID #5-1 at PageID #75.)  According to Zhen, she was "apprehended on entry and eventually inspected and conditionally paroled from legacy Immigration and Naturalization Service's custody on August 3, 1993, and issued an Order to Show Cause why she should not be deported." (*Id.*)  According to

---

[1] In her Petition, Zhen provides a summary of the factual and procedural background of her case.  (*See* Doc. No. 1 at PageID #2–4.)  In his Return of Writ, Respondent attaches a declaration by Lucas Wandyg ("Wandyg"), a "Deportation Officer with the Detroit Office of Enforcement and Removal Operations ("ERO"), U.S. Immigration and Customs Enforcement (ICE), [and] Department of Homeland Security (DHS)" in which he represents that he has "reviewed ICE's official records" and is familiar with Zhen's case.  (Doc. No. 5-1 at PageID #74–75.)  The declaration provides additional dates and procedural details of Zhen's case.  (*See id.*)  Notably, Wandyg's declaration is sworn under penalty of perjury. *See* 28 U.S.C. § 1746.  Accordingly, for purposes of setting forth the background for this Opinion, the Court relies on the statements contained in Zhen's Petition and Wandyg's Declaration.

Respondent, Zhen "was not lawfully admitted or paroled into the United States of America at any point in time."  (Doc. No. 5 at PageID #60.)

In 2009, Zhen had a merit hearing before an immigration judge ("IJ"), from whom she "sought withholding of removal from China on the grounds that if removed there she would be imprisoned due to her illegal departure from that country in 1993, and that during that imprisonment she was more likely than not to be tortured."  (Doc. No. 1 at PageID #2; *see also* Doc. No. 5 at PageID #61.) Following an individual hearing, the IJ denied Zhen's application for withholding of removal under the Convention Against Torture.  (Doc. No. 1 at PageID #2.)  On May 12, 2009, the IJ granted Zhen Voluntary Departure, and she was "ordered to depart the United States at her own expense on/or before May 12, 2010."  (Doc. No. 5-1 at PageID #75.)

On May 29, 2009, Zhen appealed the IJ's decision to the Board of Immigration Appeals ("BIA").  (*Id.*; Doc. No. 1 at PageID #2.)  On August 3, 2011, the BIA dismissed Zhen's appeal and gave Zhen Voluntary Departure for a period of sixty (60) days.  (*Id.*)  On or about August 10, 2011, Zhen filed a petition for review of the BIA's decision with the Sixth Circuit Court of Appeals.  (*Id.*) According to Respondent, on October 2, 2011, "the Voluntary Departure Order converted to a Deportation Order" as Zhen "did not depart the United States within the 60-day period authorized by the BIA."  (Doc. No. 5-1 at PageID #75.)  On July 11, 2012, Zhen was "placed on an Order of Supervision by DHS and instructed to obtain a passport."  (*Id.*)  On October 29, 2012, the Sixth Circuit upheld her deportation and issued the mandate on February 13, 2013.[2]  (*Id.* at PageID #3.)  On

---

[2] According to Zhen, the Sixth Circuit initially denied her Petition "in material part on the grounds that the Board properly concluded that her incarceration for illegal departing China would not constitute 'persecution.'"  (Doc. No. 1 at PageID #2–3.)  "Zhen then filed a petition for rehearing *en banc*, pointing out that the panel's decision was not responsive to her request for withholding of removal under the Convention Against Torture, in response to which the panel amended its decision but still upheld her deportation."  (*Id.* at PageID #3.)

February 27, 2013, Zhen filed a petition for writ of certiorari to the United States Supreme Court. (*Id.*; Doc. No. 5-1 at PageID #76.)  On April 15, 2013, the United States Supreme Court denied the writ of certiorari.  (Doc. No. 1 at PageID #3; Doc. No. 5-1 at PageID #76.)

On July 19, 2018, Zhen filed a motion to reopen her deportation proceedings with the BIA on the grounds that her Order to Show Cause did not specify a time and date for a hearing.  (*Id.*)  On June 7, 2019, the BIA denied that motion.  (*Id.*)

On June 3, 2025, Zhen was taken into custody based on her final order of deportation.  (Doc. No. 5-1 at PageID #76.)  On or around June 4, 2025,[3] "Zhen filed a motion to terminate with the BIA, or, alternatively, to reopen *sua sponte*, her deportation proceedings, so that she might apply for adjustment of status based upon her adult U.S. citizen son's approved Form I-130, Petition for Alien Relative upon her behalf."  (Doc. No. 1 at PageID #3; *see also* Doc. No. 5-1 at PageID #76.)  Zhen also "requested that the Board stay the execution of her deportation order pursuant to 8 C.F.R. § 1003.2(f) until a decision was made on her application or, at least, on her motion."  (Doc. No. 1 at PageID #4.)  Zhen indicates that "[e]mergency treatment was requested because she had been taken into custody and so deportation appeared imminent."  (*Id.*)

On June 10, 2025, the BIA rejected this motion.  (Doc. No. 5-1 at PageID #76.)  That same day, Zhen filed an "application for adjustment of status (Form I-485) … with the United States Citizenship and Immigration Services ("USCIS")."  (Doc. No. 1 at PageID #4.)  On June 16, 2025, Zhen "resubmitted the rejected motion with the BIA," which was accepted by the BIA on June 18,

---

[3] Zhen asserts that this motion was filed on June 4, 2025, while Respondent contends that it was filed on June 5, 2025. (*Compare* Doc. No. 1 at PageID #3, *with* Doc. No. 5-1 at PageID #76.)

3

2025, and is "currently pending with the BIA."  (Doc. No. 5-1 at PageID #76; Doc. No. 5 at PageID #61.)

On July 2, 2025, Zhen was provided an application to complete in order for U.S. Immigration and Customs Enforcement ("ICE") to obtain a travel document.  (Doc. No. 5-1 at PageID #76; Doc. No. 5 at PageID #62.)  On July 18, 2025, after receiving the completed documents from Zhen, ICE Enforcement and Removal Operations ("ERO") requested a travel document for Zhen from the government of The People's Republic of China.  (Doc. No. 5-1 at PageID #77.)  According to Respondent, "ICE believes there is a significant likelihood Zhen will be removed in the reasonably foreseeable future" and "ICE has successfully removed individuals to The People's Republic of China, and there is no reason to believe that ICE will be unable to continue doing so."  (*Id.*)

On July 18, 2025, Zhen filed her Petition.  (Doc. No. 1.)  On July 21, 2025, this Court issued an Order setting an expedited briefing schedule on Zhen's Petition.  (Doc. No. 3.)  On July 25, 2025, Respondent filed his Return of Writ.  (Doc. No. 5.)  On July 27, 2025, Zhen filed her Response (hereinafter "Traverse").  (Doc. No. 6.)  Accordingly, Zhen's Petition is ripe for review.

## II.    Law and Analysis

### A.    Subject Matter Jurisdiction

At the outset, the parties dispute whether the Court has subject matter jurisdiction over this matter.  The Court begins its analysis with this threshold issue.  *See Karki v. Jones*, 2025 WL 1638070, at *3 (S.D. Ohio June 9, 2025) ("The fundamental question of subject matter jurisdiction must precede any analysis of the merits on this matter.").

In her Petition, Zhen asserts numerous bases for jurisdiction including habeas jurisdiction pursuant to 28 U.S.C. § 2241 et seq., the Administrative Procedure Act ("APA"), and general federal

4

question jurisdiction under 28 U.S.C. § 1331.  (Doc. No. 1 at PageID #5.)  Zhen also contends that her action arises under the Due Process Clause of the Fifth Amendment, and that this Court "may grant relief under the habeas corpus statutes," "the Declaratory Judgment Act," "and the All Writs Act."  (*Id.*)  Next, Zhen maintains that federal courts are not stripped of jurisdiction under 8 U.S.C. § 1252.  (*Id.*)  Finally, Zhen argues that the Court has jurisdiction under the Suspension Clause, notwithstanding statutory provisions that otherwise deprive courts of jurisdiction over executions of removal orders, to review the actions of the executive branch's enforcement of the immigration laws if those actions violate the Constitution."  (*Id.*)

In his Return of Writ, Respondent submits that the Court lacks jurisdiction to challenge Zhen's removal under 8 U.S.C. § 1252.  (Doc. No. 5 at PageID #65.)  Respondent contends that in § 1252(g) through the REAL ID Act, Congress limited the jurisdiction of the federal courts and decided that federal courts "do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order."  (*Id.*)  Respondent asserts that this statutory limitation also applies to habeas relief under § 2241, as well as review pursuant to the All Writs Act and APA.  (*Id.* at PageID #65, 70–71.)

In her Traverse, Zhen maintains that Respondent mischaracterizes the relief that she seeks in her Petition.  (Doc. No. 6 at PageID #79.)  Zhen contends that she is "not challenging the validity of her removal order."  (*Id.*)  Rather, Zhen indicates that she only challenges her detention which does not require the Court to "address the merits of her order of removal," which sufficiently creates subject matter jurisdiction under § 2241.  (*Id.* at PageID #78.)

"In the REAL ID Act, Congress sought to channel judicial review of an alien's claims related to his or her final order of removal through a petition for review at the court of appeals."  *Elgharib v.*

5

*Napolitano*, 600 F.3d 597, 600 (6th Cir. 2010); *see also Rranxburgaj v. Wolf*, 825 Fed. App'x. 278, 280–81 (6th Cir. 2020).  Congress thus provided in 8 U.S.C. §1252(g), "Exclusive jurisdiction," that:

> "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

§ 1252(g).  Courts have routinely found that § 1252(g) deprives district courts of subject-matter jurisdiction over constitutional challenges to final orders of removal.  *See, e.g.*, *Elgharib*, 600 F.3d at 606; *Rranxburgaj*, 825 Fed. App'x. at 282.

Notwithstanding the above, the Sixth Circuit has drawn a distinction where a petitioner brings a claim challenging his detention as opposed to his removal.  *See Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018).  In such cases, "the district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims."  *Id.*; *Karki*, 2025 WL 1638070, at *8.  Accordingly, if a petitioner "raise[s] a challenge that [does] not require the district court to address the merits of her order of removal," Sixth Circuit precedent indicates that jurisdiction is not precluded by § 1252(g).[4]  *Elgharib*, 600 F.3d at 605; *see also Xie Deng Chen v. Barr*, 2021 WL 2255873, at *1–2 (N.D. Ohio Feb. 5, 2021) ("[Courts] have jurisdiction over Section 2241 habeas corpus petitions so long as the petitioner's claim arises out of immigration detention and concerns constitutional or statutory issues … Because [Petitioner] challenges the duration of his detention as unconstitutional, but does not challenge the merits of his removal order here, the District Court has jurisdiction.").

---

[4] Courts outside of this Circuit have reached the same conclusion.  *See, e.g.*, *Roe v. Oddo*, 2025 WL 1892445, at *4 (W.D. Pa. July 9, 2025) ("Here, the Court is not reviewing Petitioner's removal order. Instead, it is examining the contest of Petitioner's detention. Thus, the Court has jurisdiction to proceed under said scope of review.").

The Court finds that subject-matter jurisdiction exists in this matter.  Here, Zhen concedes that she is "not challenging the validity of her removal order" or "DHS's authority to remove her." (Doc. No. 6 at PageID #79.)  Instead, Zhen merely challenges her current detention while she *awaits* removal, raising numerous arguments why her detention *itself* is unlawful.  (*See id.* at PageID #79–82.)  This is precisely the sort of detention-based claim that falls outside the purview of § 1252(g). *See Karki*, 2025 WL 1638070, at *8 (citing cases); *cf. El Moustrah v. Barr*, 2020 WL 1473305, at *2 (E.D. Mich. Mar. 25, 2020) (suggesting that jurisdiction could exist where petitioner "argu[es] that he only challeng[es] his detention, not his removal" but ultimately finding no jurisdiction because "Petitioner ha[d] not argued that his detention is illegal in itself").  Accordingly, the Court concludes that subject-matter jurisdiction exists and will proceed to the merits of Zhen's Petition.

**B.      Merits of the Petition**

The Court next turns to the merits of Zhen's Petition.

**1.      Statutory Framework**

Before turning to the parties' arguments, the Court summarizes the relevant statutory framework at issue.

8 U.S.C. § 1231 (hereinafter "§ 1231") governs the procedures for the detention and removal of aliens that are subject to an order of removal.  The statute provides as follows:

> "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."[5]

---

[5] § 1231(a)(1)(B) provides that the removal period begins on the latest of the following: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.  *See* § 1231(a)(1)(B)(i)-(iii).  In this case, it is undisputed that the removal period began on the date the order of removal became administratively final—which

§ 1231(a)(1)(A).  The statute further provides that "[d]uring the removal period, the Attorney General shall detain the alien."  § 1231(a)(2)(A).

Following this 90-day "removal period" window, the statute "sets forth two options for a non-citizen who was not removed during the removal period."  *Maziar Mosberian Tanha v. Warden, Baltimore Detention Facility*, 2025 WL 2062181, at *7 (D. Md. July 22, 2025).  First, "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations[6] prescribed by the Attorney General."  *See* § 1231(a)(3). Alternatively, certain categories of aliens "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  *See* § 1231(a)(6).[7]  Although the statute does not impose a time limit on this continued detention beyond the removal period pursuant to § 1231(a)(6), the "Supreme Court has held that such a non-citizen 'may be held in confinement for a period reasonably necessary to bring about that alien's removal' and post-removal period detention under [§ 1231(a)(6)] for six months or less, inclusive of the removal period, is 'presumptively reasonable' (and therefore does not, on its own, result [in] constitutional injury." *Maziar*, 2025 WL 2062181, at *7 (citing *Zadvydas v. Davis*, 533 U.S. 678, 683, 701 (2001)).

---

Petitioner indicates occurred on October 29, 2012, when the Sixth Circuit denied her petition for review—and has thus long since ended.  (Doc. No. 1 at PageID #7.)

[6] As explained further below, such regulations include 8 C.F.R. § 241.4.

[7] The full text of § 1231(a)(6) is as follows:

> "An alien ordered removed who is inadmissible under section 1182 of this title, removal under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."

*See* § 1231(a)(6).

8 C.F.R. § 241.4 (hereinafter "§ 241.4") sets forth regulations regarding the custody and detention of aliens beyond the initial 90-day removal period.  In relevant part, § 241.4 requires ICE to conduct an initial review as to whether an alien should be granted released on supervision or "continue [to be held] in custody beyond the removal period."  *See* § 241.4(a), (h)(1), (h)(2), (k)(2). Such a review must occur "prior to the expiration of the removal period," "or as soon as possible thereafter, allowing for any unforeseen circumstances or emergent situation."  *See* § 241.4(h)(1), (k)(1)(i), (k)(2)(iv).  § 241.4 applies to all aliens detained following the removal period.  *See* Detention of Aliens Ordered Removed, 65 Fed. Reg. at 80291.[8]

When an alien is released from custody on supervision, that release may be revoked as set forth in § 241.4(l).  The regulations grant broad authority to revoke supervised released, providing, in relevant part:

> "Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

---

[8] "In promulgating 8 C.F.R. § 241.4, INS explained that all aliens, including aliens first detained following their removal period, would be eligible for possible release under § 241.4."  *Jimenez v. Cronen*, 317 F. Supp.3d 626, 649 (D. Mass. 2018).  Specifically, when publishing § 241.4 in the Federal Register, INS provided as follows:

> "This rule establishes a permanent custody review procedure applying to aliens who are detained following expiration of the 90-day removal period … This permanent review procedure governs *all* post-order custody reviews inclusive of aliens who are the subjects of a final order of removal, deportation, or exclusion, with the exception of inadmissible Mariel Cubans…"

Detention of Aliens Ordered Removed, 65 Fed. Reg. at 80291 (emphasis added).

(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."

§ 241.4(l)(2)(i)–(iv).

### 2.  Failure to Detain During Removal Period

### a.  Applicability of § 241.4

In her Petition, Zhen primarily argues that because she was never detained during the initial removal period under § 1231(a)(2), she cannot "continue" to be detained under any other provision. (Doc. No. 1 at PageID #7.)  Zhen cites to § 1231(a)(6) as "[t]he only conceivable basis for [her] detention," noting that it provides that certain classes of aliens "may be detained *beyond* the removal period …"  (*Id.* (citing § 1231(a)(6)) (emphasis added).  Zhen contends that she was never detained after the Sixth Circuit denied her petition for review and triggered the removal period.  (*Id.*)  Thus, Zhen asserts that "[o]ne may not be detained 'beyond the removal period' if one was not detained during the removal period itself," and that "§ 1231(a)(6) authorizes only the continued detention of noncitizens whom the DHS has not succeeded in removing during the removal period … [but] DHS has not failed to succeed in removing Petitioner because it has not tried."  (*Id.* at PageID #8.)  Next, Zhen turns to 8 C.F.R. § 241, similarly arguing that the provision "authorize[s] [the government] to **continue** to detain, beyond the 90-day removal period," which she contends is again inapplicable to her "because she was never detained during that period to begin with."[9]  (*Id.* at PageID #8–9 (emphasis in original).)

---

[9] On this point, Zhen cites case law addressing the meaning of the phrase "detain beyond" as used in the context of traffic stops.  (*See* Doc. No. 1 at PageID #9–10.)

In his Return of Writ, Respondent contends that "immigration officials retain discretion not to execute a final order of removal within 90 days." (Doc. No. 5 at PageID #66.) Respondent asserts that the use of the term "shall" in § 1231(a) does not create a judicially enforceable mandate. (*Id.* at PageID #67.) According to Respondent, ICE released Zhen on an Order of Supervision pursuant to § 1231(a)(3), and later revoked her supervised release and detained her to effectuate her removal as permitted by § 241.4. (*Id.*) Respondent specifically points to § 241.4(l)(2)(iii) for the authority to revoke supervised release "when, in the opinion of the revoking official … [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," maintaining that "[i]t is within ICE's authority to end [Zhen's] supervised release and detain her while they process her removal.[10] (*Id.*)

In her Traverse, Zhen argues that § 241.4(l)(2)(iii) does not authorize her detention because she was never detained pursuant to its procedures. (Doc. No. 6 at PageID #82–83.) Specifically, Zhen asserts that § 241.4(l) expressly applies to the revoking of release and return to custody of an alien "previously approved for release under the procedures in this section." (*Id.* at PageID #83.) Zhen contends that the "procedures in this section" refers to § 241.4(a), which addresses the procedures for whether to "***continue*** an alien in ***custody beyond the removal period*** …" (*Id.* (emphasis in original).) Thus, Zhen maintains that she was never "previously approved for release" under the procedures of § 241.4(l) because the only time she was released was in 1993, which was decades before her removal period—and therefore, could not have been effectuating this regulation

---

[10] Respondent asserts other arguments related to Zhen's removal order.  However, since Zhen has conceded that she "is not challenging the validity of her removal order," (Doc. No. 6 at PageID #79), the Court finds it unnecessary to address these arguments.

that relates to continued custody beyond the removal period.  (*Id.* at PageID #83–84.)  Simply put, Zhen argues that DHS "cannot 'continue' to hold someone in custody beyond the removal period if they are not detained during the removal period to begin with."  (*Id.* at PageID #84.)

As explained previously, § 1231(a) provides that "when an alien is ordered removed, the Attorney General *shall* remove the alien from the United States within a period of 90 days [i.e., the removal period]."  § 1231(a)(1)(A) (emphasis added).  The statute further provides that "[d]uring the removal period, the Attorney General *shall* detain the alien."  § 1231(a)(2) (emphasis added).

Importantly, however, the Sixth Circuit has determined that the use of the term "shall" in § 1231(a) "does not automatically create a judicially enforceable mandate."  *Arizona v. Biden*, 40 F.4th 375, 391 (6th Cir. 2022).  This is because "immigration officials retain some discretion not to execute a final order of removal within 90 days."  *Id.*  Indeed, "Congress itself appreciate that removal would not always occur within 90 days" given that "[i]t permitted supervised release—release from custody—'[i]f the alien does not leave or is not removed within the removal period.'"  *Id.* (citing § 1231(a)(3)).  Further supporting this construction is the "basic principle that [a]t each stage of the removal process, the Executive has discretion to abandon the endeavor to remove someone."  *Id.* (internal quotation marks omitted); *see also id.* at 392 ("[C]ommon sense dictates that law enforcement officers generally retain deep-rooted discretion even in the presence of seemingly mandatory legislative commands.") (internal quotation marks omitted).  Accordingly, the Supreme Court has "expressed 'doubt' that, 'when Congress shortened the removal period to 90 days in 1996, it believed that all reasonably foreseeable removals could be accomplished in that time.'"  *Id.* at 391 (citing *Zadvydas*, 533 U.S. at 701).

12

Thus, "[e]ven an 'express statutory deadline' does not necessarily mean 'Congress intended for courts to enforce the deadline.'" *Id.* (citing cases).  "That is in part because the Executive Branch has considerable enforcement discretion in deploying limited resources to address its policy challenges." *Id.* at 392.  Given that "[t]here are many moving parts in immigration law," the Sixth Circuit has expressed "doubt [that] these laws completely eliminate the Department's discretion to decide whom to charge, whom to remove, and when to do so." *Id.* at 391.  Other district courts have reached similar conclusions.[11]

Accordingly, the Court follows Sixth Circuit precedent on this point—namely, that the use of the term "shall" in § 1231(a) "does not automatically create a judicially enforceable mandate" to remove or detain an alien within the 90-day removal period. *Arizona*, 40 F.4th at 391.

Notwithstanding the above, however, it appears that an inconsistency exists between § 1231(a) and the codified regulations set forth in § 241.4 associated therewith.  With regards to § 1231(a), "Congress itself appreciated that removal would not always occur within 90 days." *Id.*  "However, in promulgating § 241.4, INS [Immigration and Naturalization Service] evidently assumed that all aliens would be detained during the removal period." *Jimenezz v. Cronen*, 317 F. Supp.3d 626, 651 (D. Mass. 2018).  As explained above, § 241.4 applies to all aliens detained following the removal period.[12]  Yet, in enacting § 241.4, INS titled the regulation "*Continued* detention of [certain] aliens beyond the removal period," suggesting that all aliens will have been detained within the removal

---

[11] *See, e.g., I.V.I. v. Baker*, 2025 WL 1811273, at *3 (D. Md. July 1, 2025) ("Working within an area of law that affords the Executive Branch tremendous discretion, this Court is not persuaded that expiration of the removal period wholly divests the Government of power it otherwise holds to arrest an alien—particularly where the statute, regulations, and the Supreme Court have all unambiguously sanctioned post-removal period detention.").

[12] *See supra* note 8.

13

period.  *Id.* (emphasis added); *see also Jimenezz*, 317 F. Supp.3d at 651.  This interpretation is further supported by § 241.4 requiring 30 days' notice "to the detainee" while simultaneously requiring an initial custody review "prior to the expiration of the removal period."  *See* § 241.4(h)(2), (k)(1)(i); *Jimenezz*, 317 F. Supp.3d at 651.  It would not be possible to satisfy both requirements in cases in which an alien is not in custody during the removal period.  *Jimenezz*, 317 F. Supp.3d at 651.

In other words, it appears that INS—relying on the language of § 1231(a)(2) that the "Attorney General shall detain the alien" during the removal period—"evidently assumed that all aliens would be detained during the removal period" for purposes of promulgating § 241.4.  *Id.*  Given that such detention is discretionary, however, *see supra*, § 241.4 is ambiguous regarding detention of aliens who were not detained during their initial 90-day removal periods.  *Jimenezz*, 317 F. Supp.3d at 651.

In light of the above, the Court concludes that § 241.4 is applicable to aliens not detained during their initial 90-day removal period.  First, INS indicated that § 241.4 "governs *all* post-order custody reviews inclusive of aliens who are the subjects of a final order of removal, deportation, or exclusion …"  *See* Detention of Aliens Ordered Removed, 65 Fed. Reg. at 80291 (emphasis added).  Second, this reading is consistent with recognizing the broad discretion afforded to the executive branch described above.  *See Arizona*, 40 F.4th at 391–92.  It would be illogical to find that the executive branch had discretion not to detain an alien within the removal period notwithstanding § 1231(a)(2) instructing otherwise, while simultaneously refusing to apply the same logic to regulations that were drafted under the assumption—based on § 1231(a)(2)—that all aliens *would* be in detention

14

during the removal period.  *See Jimenezz*, 317 F. Supp.3d at 651.  Other district courts have recently concluded the same.[13]

Moreover, the Court is not persuaded by Zhen's contrary assertions.  In her Traverse, Zhen first argues that *Jimenezz* was "wrongly decided" because it relies on § 1231(a)(3), which "does not authorize noncitizens' post-removal period detention, but merely their supervision."  (Doc. No. 6 at PageID #85.)  Zhen thus contends that Respondent fails to show how § 1231(a)(6) authorizes the detention of a person who was not in custody during the removal period.  (*Id.* at PageID #84–85.) This argument, however, overlooks § 241.4(l)(2)(iii).  It is true that § 1231(a)(3) authorizes release on supervision.  Yet, as explained further below, § 241.4 explicitly grants ICE the "authority, in the exercise of discretion, to *revoke release* and *return to Service custody* an alien previously approved for release under the procedures in this section."[14]  § 241.4(l)(2)(iii) (emphasis added).  Thus, supervised release under § 1231(a)(3)[15] cannot be read in a vacuum without also considering the revocation of such supervision and "return to Service custody" under § 241.4(l).[16]

---

[13] *See e.g.*, *I.V.I.*, 2025 WL 1811273, at *2–3 ("As Petitioner observes, the relevant statutes and regulations speak of the removal period as a point at which an alien's custody may be *continued*, suggesting that custody would (or at least should) have begun earlier … Even so, Petitioner's removal-period argument is unpersuasive. A governmental duty to enforce the law with dispatch does not necessarily create a private right based on a failure to do so … To the extent the Government violated the law by failing to arrest Petitioner within the removal period, such an error does not go to the Government's basic power to detain him, an alien without lawful immigration status, subject to a final order of removal.").

[14] For the reasons discussed at-length above, the Court concludes that the phrase "previously approved for release under the procedures in this section" does not render § 241.4 inapplicable to Zhen solely because she was not initially detained during the removal period.  *See* § 241.4(l)(2).

[15] The same is true for § 1231(a)(6), which provides that an alien released under that section "shall be subject to the terms of supervision in [§ 1231(a)(3)]."  See § 1231(a)(6).

[16] *See also Jimenez*, 317 F. Supp.3d at 649 ("Section 1231(a)(3), therefore, provides that '[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the [Secretary of Homeland Security].' Section 241.4 is one of those regulations.").

Additionally, Zhen argues that "*Jimenezz* never considered the argument … that one cannot be held *beyond* the removal period if one has never been detained during the removal period itself." (Doc. No. 6 at PageID #85.)  Yet in *Jimenezz*, the court expressly acknowledged that "Congress contemplated that ICE might not discharge its duty to detain every alien within the removal period," and that even so, § 241.4 applied to "all aliens, including aliens *first detained following their removal period* …."  317 F. Supp.3d at 649 (emphasis added).  The court concluded that § 1231 and § 241.4 could be read to permit the detention "for an alien arrested after the removal period" provided that the requirements of § 241.4 are met.  *Id.* at 651–52.  Finally, to the extent that the issue "merely lurk[ed] in the record," as Zhen contends, the Court concludes that Zhen's argument is inconsistent with the Sixth Circuit's finding in *Arizona* that "[n]ot every 'shall' directive in a federal immigration statute … necessarily creates a judicially enforceable mandate."[17]  40 F.4th at 392.

Accordingly, the Court rejects Zhen's argument that she is not subject to § 241.4 merely because she was not detained during the 90-day removal period.

### b.  Revocation of Order of Supervision

Having concluded that § 241.4 is applicable to Zhen, the Court next evaluates the application of that regulation to Zhen's case—namely, the revocation of Zhen's supervised release.  In its Return of Writ, Respondent indicates that "[i]n keeping with the discretion afforded in 8 U.S.C. § 1231(a)(3),

---

[17] *See also Maziar*, 2025 WL 2062181, at *7 ("[T]he record contains no indication that Petitioner was ever detained (before July 1, 2025). Instead, Petitioner was ordered removed … and released on an OSUP [order of supervision] …. [I]t seems nonsensical to disallow the Government from detaining Petitioner for any period following statutory revocation of his OSUP based on the rote calculation of days that have elapsed since his removal period expired … [given] (1) the broad authority of the Executive under immigration law generally and, more specifically, to revoke release orders to remove a non-citizen; and (2) the general recognition that detention during deportation proceedings is constitutionally valid. It does not withstand scrutiny to suggest that upon securing the liberty afforded by an OSUP, after six months have passed, a non-citizen has effectively been granted a shield to guard himself from detention upon revocation while removal is in process.") (reaching similar conclusion regarding claim under *Zadvydas*) (citations omitted).

16

ICE released Zhen on an Order of Supervision after her removal period expired."  (Doc. No. 5 at PageID #67; *see also* Doc. No. 5-1 at PageID #75 ("On July 11, 2012, the petitioner was placed on an Order of Supervision by DHS and instructed to obtain a passport.").)  Respondent then indicates that pursuant to the discretion afforded by § 241.4(l)(2)(iii), DHS "revoke[d] the supervised release and detain[ed] Zhen in order to effectuate her removal."  (Doc. No. 5 at PageID #67.)  Zhen, in her Traverse, does not address the discretion afforded by § 241.4(l) to revoke her supervised release aside from arguing that: (i) § 241.4 does not apply to her at all because she was never "previously approved for release under the procedures in § 241.4" or detained initially during the removal period;[18] and (ii) there is no evidence that DHS can execute her removal order at this time.  (Doc. No. 6 at PageID #79–82.)

Pursuant to § 241.4(l)(2), the government may:

"[R]evoke release and return to Service custody an alien previously approved for release … in the exercise of discretion when, in the opinion of the revoking official:

(i) The purposes of release have been served;

(ii) The alien violates any condition of release;

---

[18] As explained above, the Court rejects these arguments and instead finds that § 241.4 applies to aliens who were not detained during the initial removal period but instead placed on an order of supervision following the removal period. *See supra* Section II.B.2.a; *see also supra* note 8.  Finally, Zhen argues that she could not have been "released" pursuant to the procedures in § 241.4 because she was only in custody in 1993, while § 241.4 was not enacted until 2000.  (Doc. No. 6 at PageID #84.)  Yet this argument misreads the regulation.  § 241.4 involves procedures for determining whether to continue an alien in custody or release the alien on supervision *beyond the removal period.  See* § 241.4(a).  In other words, § 241.4 provides the next steps for an alien ordered removed once the 90-day removal period has concluded.  Here, Zhen contends that her 90-day removal period began on October 29, 2012, when the Sixth Circuit denied her petition for review—well after the enactment of § 241.4.  *See supra* note 5.  Rather than remove her within 90 days, Zhen was permitted to remain in the United States on an Order of Supervision, as authorized by § 1231(a)(3) and § 241.4.  (Doc. No. 5-1 at PageID #75.)  The mere fact that Zhen was not detained during the 90-day period does not change this conclusion, or the applicability of §241.4, in light of the discretionary nature of § 1231(a)(2) and INS's intent for § 241.4 to "apply[] to aliens who are detained following expiration of the 90-day removal period … [and] govern[] *all* post-order custody reviews inclusive of aliens who are the subjects of a final order of removal …"  *See supra* Section II.B.2.a; Detention of Aliens Ordered Removed, 65 Fed. Reg. at 80291.

(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien;

(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."

§ 241.4(l)(2)(i)–(iv).  "The regulation permits the Government extraordinarily broad discretion to revoke an OSUP; and that discretion is expressly not limited to circumstances where a non-citizen violates the conditions of his OSUP."  *Maziar*, 2025 WL 2062181, at *5.  "Further, the regulation does not compel the Government to demonstrate what facts or factors, if any, it considered in deciding to revoke; nor does the regulation … require the Government to demonstrate what, if any, steps it took to effect or secure removal prior to OSUP revocation."  *Mong Tran v. Nikita Baker*, 2025 WL 2085020, at *4 (D. Md. July 24, 2025).

Here, Respondent indicates that pursuant to DHS regulations set forth in § 241.4(l)(2)(iii), ICE "revoke[d] [Zhen's] supervised release[] and detain[ed] Zhen in order to effectuate her removal" based upon their determination that "it is appropriate to enforce a removal order …"  (Doc. No. 5 at PageID #67.)  Notably, Zhen does not address or challenge this revocation of supervised release in her Traverse.  (*See generally* Doc. No. 6.)  Accordingly, "[t]he Court will not further scrutinize ICE's discretionary decision—especially considering Petitioner has failed to raise evidence demanding further inquiry."[19]  *Roe v. Oddo*, 2025 WL 1892445, at *8 (W.D. Pa. July 9, 2025).

---

[19] The Court notes that there are certain procedural requirements when revoking supervision pursuant to § 241.4.  These include "notif[ying] [her] of the reasons for [the] revocation [and] … her return to [ICE] custody," and "afford[ing] her an opportunity to respond to the reasons for revocation stated in the notification," which "precedes a full custody review conducted 'approximately three months after release is revoked.'"  *Jimenez*, 317 F. Supp.3d at 652.  First, the Court observes that "Petitioner does not allege any specific violations of the regulation allowing for revocation when ICE determines that it 'is appropriate to enforce a removal order against an alien.'"  *Ghamelian v. Baker*, 2025 WL 2049981, at *4 n.5 (D. Md. July 22, 2025); *see also Thai v. Hyde*, --- F. Supp.3d ----, 2025 WL 1655489, at *2 (D. Mass. June 11, 2025) ("Moreover, petitioner does not allege any failure by ICE to comply with regulations that permit detention of those who violate conditions of release.").  Second, Respondent has submitted a sworn declaration providing that: (i) "On July 18, 2025, after receiving the completed documents from the petitioner, ICE ERO requested a travel document for the

18

Nonetheless, Zhen argues generally (without referencing § 241.4) that detention is not a prerequisite to removal, and that DHS cannot currently execute her order as "ICE has merely requested a travel document for her from China … which shows that she cannot be removed at this time." (Doc. No. 6 at PageID #79–81.)  The Court rejects these arguments.  First, the Supreme Court has found that "[d]etention during removal proceedings is a constitutionally permissible part of that process."[20]  *Demore v. Kim*, 538 U.S. 510, 531 (2003).  Second, while perhaps not a "prerequisite"[21]

---

petitioner from the government of The People's Republic of China"; (ii) "ICE ERO believes there is a significant likelihood of removal in the reasonably foreseeable future"; (iii) "ICE has successfully removed individuals to The People's Republic of China, and there is no reason to believe that ICE will be unable to continue doing so"; (iv) "I am unaware of any institutional barriers that would prevent ICE from obtaining a travel document for the petitioner from The People's Republic of China or that would prevent ICE from removing her to The People's Republic of China once it receives her travel document"; and (v) "I am unaware of any institutional barriers that would prevent the petitioner's removal from occurring in the reasonably foreseeable future." (Doc. No. 5-1 at PageID #77.)  Thus, the Court is "satisfied at this time that ICE has drawn a reasonable conclusion that [Zhen's] removal … in the reasonably foreseeable future is significantly likely based on the totality of circumstances including that ICE requested travel documents for her …"  *Mong Tran*, 2025 WL 2085020, at *5.  Finally, while nothing presently indicates that ICE has not complied with the procedures set forth in § 214.4, the Court notes that even if these procedures have not yet been completed, courts have found that such procedures may take place after the detention has occurred.  *See, e.g.*, *Jimenez*, 317 F. Supp.3d at 652 (suggesting that notice of revocation and informal interview can occur "promptly after … her return to [ICE] custody … [which] precedes a full custody review conducted 'approximately three months after release is revoked'"); *I.V.I.*, 2025 WL 1811273, at *3 (finding that any error related to custody review was "still remediable by the provision of any process he may have been denied, rather than by release alone"); *Maziar*, 2025 WL 2062181, at *6 (finding that failure to "promptly" schedule informal interview pursuant to § 241.4(l)(1) did not alone warrant habeas relief at early stage).  Accordingly, the Court "cannot conclude that relief is warranted at this stage, but that does not prevent Petitioner from seeking future relief should [she] not receive the process that is constitutionally required."  *Ghamelian*, 2025 WL 2049981, at *4 n.5.

[20] *See also Wong Wing v. U.S.*, 163 U.S. 228, 235 (1896) ("We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid …"); *Oddo*, 2025 WL 1892445, at *7 ("Indeed, the sole purpose of re-detaining Petitioner is to facilitate his removal.").

[21] In her Traverse, Zhen asserts that "[t]here is certainly no reason why the DHS may not simply direct the person to be removed to appear at the airport from which her plane is departing." (Doc. No. 6 at PageID #81.)  "But that is not the legal standard this Court must apply."  *Ghamelian*, 2025 WL 2049981, at *4; *see also id.* (rejecting argument that "detention would be unnecessary to guarantee [the petitioner's] availability for removal, once ordered). Zhen's purported willingness to "appear at the airport," as she suggests, "do[es] not permit this Court to ignore 'Executive Branch primacy in foreign policy matters' or to read restrictions into § 1231(a)(6) [and § 241.4] that simply are not there." *Id.* Rather, as explained above, § 241.4(l)(2)(iii) permits the revocation of her supervised release and return to custody. Finally, while not necessary to reach its conclusion, the Court observes that before the IJ, Zhen "indicated her willingness to depart the United States voluntarily once all her remedies of appeal have been exhausted," and as a result, the IJ exercised his discretion to grant Zhen "Voluntary Departure." (Doc. No. 1 at PageID #42–43.)  Yet, following the exhaustion of her appeals, Zhen did not voluntarily depart.

19

to removal, § 241.4 expressly permits "revok[ing] release and return[ing] to Service custody an alien previously approved for release … [when] it is appropriate to enforce a removal order or to commence removal proceedings against an alien." § 241.4(l)(2)(iii).  Third, the mere fact that ICE has "requested a travel document" for Zhen from China does not mean that "DHS is not detaining her for the purpose of executing her removal order" or that "DHS has no ability to in fact execute the order."  (Doc. No. 6 at PageID #80–81.)  Indeed, courts have rejected this very argument, instead finding that requests for travel documents support a finding of reasonably foreseeable removal.[22]

Accordingly, based on the record before it, the Court finds that ICE validly revoked Zhen's order of supervision and returned her to custody pursuant to § 241.4(l)(2)(iii).

### c.  Inadmissibility Regarding § 1231(a)(6)

Finally, the Court turns to Zhen's argument that she is not subject to § 1231(a)(6).

In her Petition, Zhen contends that she does not fall within the class of people removable under § 1231(a)(6).  (Doc. No. 1 at PageID #12.)  Zhen asserts that there is "no reason why she should have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal."  (*Id.*)  Further, Zhen argues that she is not "inadmissible" under 8 U.S.C. § 1182(a)(6)(A)(i).  (*Id.*)  Specifically, Zhen maintains that following her entry into the country in 1993, she was "conditionally 'paroled' into this country" and is therefore not a person "present in the United

---

[22] *See, e.g.*, *Oddo*, 2025 WL 1892445, at *7 ("[D]ue to changes in circumstances—such as the administrative policy change *and the submission of a travel document application*—Petitioner's removal is likely in the reasonably foreseeable future.") (emphasis added); *Ghamelian*, 2025 WL 2049981, at *4 (rejecting petitioner's argument that "there is no significant likelihood of his removal in the reasonably foreseeable future[] because the government is only 'seeking' travel documents from two different countries and has no concrete plan for his removal"); *Mong Tran*, 2025 WL 2085020, at *5 ("[T]he court is satisfied at this time that ICE has drawn a reasonable conclusion that [the petitioner's] removal to Vietnam in the reasonably foreseeable future is significantly likely based on the totality of circumstances *including that ICE requested travel documents for her in April 2025 …*") (emphasis added).

States without being admitted or paroled." (*Id.* at PageID #12–13.) On this point, Zhen contends that her release from custody constituted a "parole" as it was understood at the time,[23] which she defines as a "conditional and revocable release." (*Id.* at PageID #15–17.)

In his Return of Writ, Respondent asserts that Zhen's argument is "baseless" because "[i]n her 2009 deportation proceedings, Zhen conceded deportability in accordance with § 1231." (Doc. No. 5 at PageID #70.) Further, Respondent maintains that § 1252 bars review of this determination, "providing that 'no court' has jurisdiction over 'any cause or claim' arising from the execution of removal orders …" (*Id.* at PageID #70–72.)

In her Traverse, Zhen argues that a "concession of deportability is not an admission of inadmissibility." (Doc. No. 6 at PageID #86.) Zhen contends that the INA has "long distinguished" between the two, and that inadmissibility "pertains to noncitizens seeking admission" while "deportability relates to noncitizens already admitted but removable." (*Id.*) Thus, Zhen asserts that "because she was ordered deported, she was necessarily held to have been admitted and so is not 'admissible'." (*Id.* at PageID #87.)

As explained above, if a petitioner "raise[s] a challenge that [does] not require the district court to address the merits of her order of removal," Sixth Circuit precedent indicates that jurisdiction is not precluded by § 1252. *Elgharib*, 600 F.3d at 605. In this case, Zhen is not challenging the government's ability to remove her. (Doc. No. 6 at PageID #79.) Rather, she is challenging her detention under § 1231(a)(6) on the basis that she does not fall within the class of "inadmissible"

---

[23] Specifically, Zhen references a 2010 BIA decision "holding that 'conditional parole' under section 236(a)(2)(B) of the Immigration and Nationality Act does not constitute 'parole' within the meaning of INA § 245(a)." (Doc. No. 1 at PageID #14.) However, Zhen asserts that she relies instead upon the "plain meaning of the word 'parole' as it was understood at the time of adoption of the Immigration and Nationality Act of 1952." (*Id.*)

aliens pursuant to § 1182. Even if the Court were to find this to be true, that would not affect her removal because she is not contesting that she is "deportable" and thus "removable." Accordingly, the Court construes Zhen's claim as challenging her detention but not her removal, and thus finds that it is not subject to the jurisdictional bar in § 1252.

In relevant part, § 1231(a)(6) permits an alien who is inadmissible under § 1182 to be "detained beyond the removal period." *See* § 1231(a)(6). Under § 1182, "[a]n alien present in the United States without being admitted or paroled … is inadmissible." *See* § 1182(a)(6)(A)(i).

"Immigration law features two parallel statutory schemes for regulating the movements of non-citizens." *Leal-Rodriguez v. I.N.S.*, 990 F.2d 939, 942 (7th Cir. 1993). "One involves exclusion,[24] or the process of excluding people who seek to enter the United States, while the other involves deportation, or the process of expelling people who are already present in the country." *Id.* "The grounds for exclusion largely overlap with those for deportation …" *Id.*

The Supreme Court has had occasion to address "whether the granting of temporary parole somehow effects a change in the alien's legal status." *Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958). Recognizing that "immigration laws have long made a distinction between those aliens who have come to our shores seeking admission … and those who are within the United States after an entry," the Supreme Court nevertheless concluded that "parole 'shall not be regarded as an admission of the alien,' and that after the return to custody the alien's case 'shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Id.* at 187–88. Rather, the Supreme Court found that the "parole of aliens seeking admission is simply a device

_____

[24] Prior to 1996, the statute used the term "excludable" rather than "inadmissible." *See* OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat. 3009.

through which needless confinement is avoided while administrative proceedings are conducted" and "was never intended to affect an alien's status."[25]  *Id.* at 190; *see also Fieran v. I.N.S.*, 268 F.3d 340, 343 (6th Cir. 2001).

Considering the above, the Court rejects Zhen's arguments that she was "paroled" into this country such as not to be rendered "inadmissible" under § 1182.  Rather than rely on the "standard dictionary" definition of the term "parole" as Zhen contends, the Court instead finds that precedent at the time established that "parole 'shall not be regarded as an admission of the alien,' and that after the return to custody the alien's case 'shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'"  *Leng May Ma*, 357 U.S. at 188.  Thus, even if the Court were to rely on the law at the time of entry,[26] this would not render Zhen admissible.  For these same reasons, the Court rejects Zhen's argument that she could not have been found inadmissible solely because she was ordered deported by the IJ.[27]

---

[25] Because Zhen entered the United States in 1993, the Court relies upon the law at the time of her entry—namely, before the 1996 amendments to the statute.  *See Fieran*, 268 F.3d at 343.

[26] Under the current law, the Court finds that *Matter of Castillo-Padilla*, 25 I. & N. Dec. 257 (BIA 2010) supports the notion that an "alien who was released from custody on conditional parole … has not been 'paroled into the United States' for purposes of establishing eligibility for adjustment of status ..." and "is a distinct and difference procedure from parole under section 212(d)(5)(A) of the Act, 8 U.S.C. § 1182(d)(5)(A)."

[27] *See also Leal-Rodriguez*, 990 F.2d at 942 ("The grounds for exclusion largely overlap with those for deportation …"); *U.S. v. Vieira-Candelario*, 797 F. Supp. 117, 120 (D.R.I. 1992) (recognizing that aliens may be "found deportable under a ground of deportation for which there is a comparable ground of exclusion"); *Carrasco-Favela v. I.N.S.*, 563 F.2d 1220, 1221 n.3 (5th Cir. 1977) ("[A] waiver of the ground of inadmissibility may be granted in a deportation proceeding when, at the time of the alien's last entry, he was inadmissible because of the same facts which form the basis of his deportability."); *Akinyemi v. I.N.S.*, 969 F.2d 285, 287 (7th Cir. 1992) (petitioner "conceded that he was deportable" under § 1231 but nonetheless "requested a waiver of inadmissibility" under § 1182); *Lomeli-Nuno v. U.S. I.N.S.*, 1992 WL 124445, at *1 (9th Cir. June 9, 1992) (same); *Barrett v. U.S.I.N.S.*, 1992 WL 288, at *1 (4th Cir. Jan. 3, 1992) (same).

"To be clear: Petitioner is entitled to due process of law in the context of [her] detention and removal proceedings." *I.V.I.*, 2025 WL 1811273, at *3.  And her detention may eventually ripen into one warranting release from custody.[28]  But as of yet, it has not.

### III.  Conclusion

Accordingly, for the foregoing reasons, Zhen's Petition is DENIED.

**IT IS SO ORDERED.**

Dated: August 7, 2025                                     *s/ Pamela A. Barker*
                                                          PAMELA A. BARKER
                                                          UNITED STATES DISTRICT JUDGE

---

[28] *See supra* note 19.  The Court also briefly references the Supreme Court's holding in *Zadvydas*, establishing a six-month period of detention as presumptively reasonable before the government must respond with evidence sufficient to demonstrate that there is a significant likelihood of removal in the reasonably foreseeable future.  *See Zadvydas*, 533 U.S. at 701.  While Zhen expressly acknowledges that she is not currently bringing a claim under *Zadvydas*, (*see* Doc. No. 6 at PageID #80), she is not precluded from bringing one in the future should her claim ripen.